Robinson, J.
 

 The questions here presented are (1) whether the provision of Section 1191, General Code, which authorizes county commissioners of any county having a tax duplicate of real and personal property in excess of $300,000,000 to co-operate with the department of highways in the construction, reconstruction, resurfacing, widening or repair of state highways, by paying such portion of the costs thereof as is agreed upon by the county commissioners and the director of highways, is unconstitutional because it is not a law of general application throughout the state; and (2) if such a classification is not violative of the inhibitions of Section 26 of Article II of the Constitution of Ohio, whether the provision of Section 1193, General Code, which authorizes the county commissioners of any county having a tax duplicate of real and personal property in excess of $300,000,-000 to specially assess a portion of the costs assumed by the county, in the construction of a state highway, against the adjacent real estate, according to any one of the several methods provided by Section 6919, General Code, is in contravention of the provisions of that section — the claimed violation of Section 19 of Article I of the Ohio Constitution, and of Section 1 of the Fourteenth Amend
 
 *106
 
 ment to the Constitution of the United States not being seriously relied upon.
 

 The pertinent portion of Section 1191, General Code, authorizes the county commissioners of any county to co-operate with the state department of highways “in constructing, reconstructing, resurfacing or widening a state highway, where the result of such construction, reconstruction, resurfacing or widening is to produce a pavement more than twenty feet in width, and the commissioners shall under such circumstances be authorized to pay all or any agreed portion of the cost of so much of any of such pavement so constructed, reconstructed, resurfaced or widened as lies outside of or extends beyond such width of twenty feet. * # * Provided, however, the county commissioners of any county having a tax duplicate of real and personal property in excess of three hundred million dollars shall also be authorized to co-operate with the department of highways in the construction, reconstruction, resurfacing, widening or repair of state highways * * *, by paying such portion of the cost thereof as is agreed upon by the county commissioners and director of highways. ’ ’
 

 It will be observed that this section authorizes any county to contribute to the cost of the construction of that portion of a state highway which exceeds twenty feet in width, and authorizes counties having a tax duplicate of $300,000,000 or over to participate in the cost of the construction of any state highway, regardless of width.
 

 The pertinent portion of Section 1193, General Code, provides:
 

 “Where the county commissioners cooperate with
 
 *107
 
 the department of highways and assume all or part of the cost of constructing, reconstructing, resurfacing or widening any pavement on a state highway to a width greater than twenty feet, such commissioners shall be authorized to specially assess such portion of that part of the cost assumed by them on behalf of the county as they may deem proper, and such special assessments may be made according to any one of the several methods provided by Section 6919 of the General Code of Ohio * * *.
 

 “When the county commissioners of any county having a tax duplicate of real and personal property in excess of three hundred million dollars cooperate with the department and assume a part of the cost of constructing, reconstructing, resurfacing or widening any pavement on a state highway, such commissioners shall be authorized to specially assess such portion of that part of the cost assumed by them on behalf of the county as they may deem proper, and such special assessments may be made according to any one of the several methods provided by Section 6919 of the General Code of Ohio # * # J J
 

 It will be observed that this section authorizes the county commissioners of any county that desires to co-operate with the state in the construction of that portion of a state highway, which is in excess of twenty feet in width, to assess a portion of the expense of such construction upon property specially benefited; but the limit of the authority of the commissioners is to especially assess a portion of the expense of the construction for the excess over twenty feet in width; whereas with reference to counties having a tax duplicate of $300,000,000 or
 
 *108
 
 over, it authorizes the county commissioners to especially assess against property benefited a portion of the cost of constructing any portion of a state highway, regardless of its width.
 

 The state highway in question is twenty feet in width, is located in a county having a tax duplicate of $300,000,000 or over, and the county commissioners have assumed a portion of the expense of the construction of such highway and propose to assess a portion of the expense thereof upon property specially benefited.
 

 Under Sections 1191 and 1193, General Code, were the same road located in a county having a tax duplicate of less than $300,000,000,-the county commissioners could neither assume a portion of the expense nor assess any portion of such expense upon property specially benefited.
 

 It may not be controverted that the difference in. the extent of the use to which state highways are subjected in the congested centers, and the extent of the use to which state highways are subjected in the sparsely inhabited districts, affords a reasonable basis for a difference in the character of construction, a difference in the capacity of the highways, and a difference in the way the public ought to be permitted to use such highways, and that such difference may afford a reasonable basis for a legislative classification in an attempt to make the government function under such varied conditions and circumstances, and to proportionately distribute the burdens and benefits thereof.
 

 It may be assumed that the excess use of highways in the congested districts over the use in the sparsely inhabited districts is due to the greater number of
 
 *109
 
 inhabitants of the congested districts that use the same. A classification which apportions the burden of construction and reconstruction of highways upon the taxing districts in approximate proportion' to the extent of the use the inhabitants of such taxing districts make of the highways is not an unreasonable classification, such being in pursuance of a policy, long extant, that each taxing district construct and maintain its own public roads, the entrance of the state into the field of road construction being of comparatively recent origin.
 

 The classification of taxing districts with reference to the value of their tax duplicates, except as a means of determining the responsibility and extent of the duties of officials in such taxing districts, and similar purposes, cannot so readily be justified as a reasonable classification.
 

 It so happens in the instant case and at the present time that the proportion between the value of the tax duplicate and the number of inhabitants in the various taxing districts is approximately the same, and for that reason the classification by value at this time and in this instance may reasonably be held to be a classification with reference to extent of use.
 

 It is the burden of every taxpayer of every taxing district to bear his proportion of the expense of sustaining the government of such taxing district, and such proportion, under our taxing system, is based upon the proportional value of his and other taxable property within the district.
 

 The contribution of the taxing district toward the construction of state highways within the taxing district is but the discharge, in part, of the duty to con
 
 *110
 
 struct and maintain its own highways, that, but for the activity of the state in constructing state highways, would have been its sole duty; and when, by reason of the extent of their population, certain taxing districts make a use of a state highway greatly in excess of the use made by other taxing districts of the same character, it is not an unreasonable classification, in attempting to equitably distribute the burden of government, to legislate with reference to a contribution by such taxing districts to the expense of constructing and reconstructing such highways in proportion to the use such taxing districts make of such highways in excess of the use thereof made by other taxing districts.
 

 "When, however, we come to consider the question of assessments according to benefits, and recognize the distinction between the benefits of an improvement common to the general public and benefits peculiar to a particular tract of land, and further recognize the fact that the location of a particular tract of land in a populous center is not a special benefit to such land, but is a benefit common to all the land of such center, we are unable to find a reason for a classification between taxing districts, otherwise of the same character, which permits the assessing for special benefits in one such taxing district and denies such assessing in another.
 

 Manifestly, the value of the tax duplicate of a county has no relationship to the question whether abutting land will or will not be especially benefited by the construction or improvement of a state highway; nor are we able, by the process of comparison of the value of tax duplicates with the number of inhabitants and the reduction of the classifi
 
 *111
 
 cation to one of nse by the county, to reason out any relationship between the extent of the use of the highways by the inhabitants of the county and special benefits to particular real estate, since the excess use, in proportion to the extent of its population, by the public of a county, is a benefit or detriment common to all the real estate of the county, and not a benefit or detriment peculiar to any particular real estate. Neither the existence or nonexistence of a great wealth of taxable property within a county, nor the existence or nonexistence of a great number of inhabitants within a county, in any way determines or. affects the accruing of special benefits to particular real estate. Such benefits, in varying extents, accrue to real estate located in sparsely inhabited .districts as well as in congested districts.
 

 We are unable to find any reason for the classification of real estate for assessment purposes, either by the extent of the wealth of the particular county in which it is located, or by the number of inhabitants in such county; and we hold that the provision of Section 1193, General Code, which attempts to authorize the commissioners in counties having a tax duplicate of $300,000,000 or more to specially assess real estate for the construction of state highways, and which does not authorize counties having a tax duplicate of less than $300,000,000 to specially assess real estate for such purpose, is violative of Section 26 of Article II of the Constitution of Ohio. The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Matthias, Day, Allen and Kinkade, JJ., concur.